UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAUSTEVION JOHNSON,<br><br>Plaintiff[s],<br><br>v.<br><br>RITA LITTLE, *et al.*,<br><br>Defendant[s]. | Case No. 2:14-cv-00649-RFB-VCF<br><br>**<u>ORDER</u>** |

## I.     INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 46). For the reasons discussed below, the motion is granted in part and denied in part.

## II.    BACKGROUND

Plaintiff Laustevion Johnson filed this pro se civil rights action on January 10, 2014, alleging three causes of action against the Director of the Nevada Department of Corrections ("NDOC"); James Cox, the Warden of Ely State Prison ("ESP"); Renee Baker; two Correctional Officers at Ely State Prison, Nwoko and D. Shorter; one Senior Officer at Ely State Prison, R. Little; the Ely State Prison Law Library Supervisor, N. Young; and the Ely State Prison Kitchen Supervisor, L. Lopez. All Defendants were sued in both their official and individual capacities. Johnson's claims are for violations of the First Amendment right to Access to the Courts, the First Amendment right to Free Exercise of Religion, and the Fourteenth Amendment's Equal Protection

Clause. These causes of action are brought pursuant to 42 U.S.C. § 1983.

Defendants filed this Motion for Summary Judgment on October 21, 2015. (ECF No. 46). Johnson filed his response on November 4, 2015. (ECF No. 49). Defendants filed a Reply on November 18, 2015. (ECF No. 51). The Court held a hearing on this Motion for Summary Judgment on September 28, 2016. (ECF No. 59).

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED AND DISPUTED FACTS

The Court incorporates its discussion of the undisputed and disputed facts from its hearing on September 28, 2016, and elaborates these facts below.

#### A. Undisputed Facts

The Court finds the following general facts to be undisputed. Plaintiff is a prisoner in lawful custody of the NDOC, and on February 1, 2012, was transferred to ESP from High Desert State Prison, and was a prisoner at ESP at all times relevant to these claims.

**B. First Amendment Access to the Courts Claim Against Defendants Young, Baker, and Cox**

**1. Undisputed Facts**

The Court finds the following facts related to Johnson's First Amendment Access to the Courts claim to be undisputed. On May 17, 2013, Johnson filed a petition for a writ of habeas corpus in the Eighth Judicial District Court seeking reversal of the Nevada State Parole Board's denial of his parole. (ECF No. 46-4). This petition was denied on June 17, 2013. (ECF No. 46-5). Johnson appealed the denial to the Nevada Supreme Court. (ECF No. 46-6). The Nevada Supreme Court affirmed the denial of his habeas petition on July 16, 2013, saying that Nevada state law precludes challenging denial of parole. (ECF No. 46-7).

Johnson had no physical access to the law library or to law clerks or jailhouse lawyers while at ESP. Johnson was able to check out materials from the ESP law library. (ECF No. 46-2). The process for checking out materials from the ESP law library is for prisoners to submit written requests for materials to officers, who deliver the requests to the library. The library then issues the materials to the corrections officers, who bring them to the prisoners' cells. The return process is similar: prisoners give the materials to the officers, who then return them to the library. (ECF No. 8). Johnson requested materials before filing his habeas claim, and received some materials. (ECF No. 46-2). Johnson requested Federal Reporters, various other federal materials, and treatises on habeas corpus, and was not provided with the actual volumes requested or sections of the volumes. When Johnson filed grievances complaining of the library's lack of materials, he was told that the materials he requested were available electronically on LexisNexis.

**2. Disputed Facts**

The parties dispute whether Johnson requested materials that weren't provided, what LexisNexis searches (if any) he requested, and whether he was provided with information requested related to these searches. The parties dispute to what extent Johnson was provided specific caselaw materials.

. . .

. . .

**C. First Amendment Free Exercise Claim Against Defendants Baker, Cox, Nwoko, Shorter, Little, and Lopez**

**1. Undisputed Facts**

The Court finds the following facts related to Johnson's Free Exercise claim to be undisputed. Johnson is Muslim, and his belief in the necessity of the Ramadan fast is sincerely held and religious in nature. (ECF No. 49-5). Johnson was scheduled to receive meals at special times during the Ramadan fast in 2013. (ECF No. 46). Ramadan in 2013 began the morning of July 9, and Johnson began receiving meals at special times on that day. (Id.) For the duration of Ramadan, Johnson's morning meals were delivered at different times each day.

**2. Disputed Facts**

The parties dispute the actual times Johnson's meals were delivered each morning. Defendants do not allege specific times, but claim that Johnson received his meals in accordance with ESP policy that morning meals during Ramadan should be served as expeditiously as possible after 5:00 am, but always before sunrise. (ECF No. 46). Johnson agrees that his meals were always served before *sunrise*, but asserts that he was served after *dawn*, and the Ramadan fast is from before *dawn* until after dark each day. Jonson argues that on July 9, 10, 15, 16, and 17, 2013, he received his meal at 5:00 am; that on July 31, 2013, he received his meal at 4:40 am; and that on August 1, 2013, he received his meal at 5:40 am. (ECF No. 49). Johnson argues that dawn was between 3:48 am and 4:15 am during the month of Ramadan (July 9 – August 10) 2013. (ECF No. 49).

Also in dispute is whether Johnson had a clock or television in his cell during Ramadan in 2013. Defendants argue that without access to a clock or television, Johnson would have no way of knowing what time his meals were served. (ECF No. 46). Johnson asserts that he had both a clock and a television during Ramadan in 2013, and was able to note the time his meals were delivered each day. (ECF No. 49).

The parties further dispute ESP policy for prisoner meals during Ramadan 2013. Defendants presented a memorandum titled "2013 Ramadan Feeding," dated June 10, 2014. (ECF No. 46-10). Defendants argue that this outlines ESP's policy for feeding prisoners who are

participating in the Ramadan fast as close to 5:00 am as possible. (ECF No. 46). Johnson argues that this memorandum is clearly dated 2014 and was not indicative of prison policy for Ramadan in 2013. (ECF No. 49).

**D. Fourteenth Amendment Equal Protection Claim Against Defendants Baker and Cox**

The Court finds the following facts related to Johnson's Equal Protection claim to be undisputed. Johnson requested a special meal for the Eid-al-Fitr feast in 2013, but his request was denied. (ECF No. 46). ESP served a special meal to all prisoners on Christmas day in 2013. (ECF No. 46).

**V. DISCUSSION**

**A. First Amendment Access to the Courts Claim**

**1. Legal Standard**

To establish a violation of the right of access to the courts, a prisoner must establish that he or she had a cognizable claim to present to the court, that the denial of access resulted in an actual injury, and the denial must not be premised on access to effective litigation. Lewis v. Casey, 518 U.S. 343, 351-355 (1996). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348 (citation omitted). The right of access to the courts is "part of the right of petition protected by the First Amendment." Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513. This right is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. Lewis, 518 U.S. at 355. ("The tools [Bounds v. Smith, 430 U.S. 817 (1977)] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.")

This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

from persons trained in the law." <u>Bounds</u>, 430 U.S. at 828 (1977), <u>overruled on other grounds by</u> <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). However, this right "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." <u>Lewis</u>, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone of the right of access to the courts." <u>Id.</u> at 357.

This is not an abstract, freestanding right. <u>Id.</u> at 351. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."<u>Id.</u>. Instead, the inmate must demonstrate "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Id.</u>

**2. Official Capacity**

### i. Legal Standard

Suing an officer in his or her official capacity is "another way of pleading an action against an entity of which the officer is an agent." <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 690, n. 55 (1978). As such, an official-capacity suit must be treated as a suit against the entity. <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985). Under <u>Monell</u>, a government entity is only liable for deprivation of rights caused by its own official policies, customs, or practices. <u>Monell</u>, 436 U.S. at 690-92 (1978).

### ii. Analysis

Johnson has sued Defendants Young, Baker, and Cox in both their official and individual capacities. The Court looks to the official capacity claims first, and, because these claims are against the same entity, the Court will consider all three official capacity claims together. Johnson alleges that ESP's policy for checking out library materials prevented him from successfully bringing his claim challenging denial of his parole. He alleges that he requested Federal Reporters and Supplements, Federal Rules of Decisions, Federal Rules of Civil Procedure, and basic treatises on habeas corpus, and did not receive them. Instead, he was told that the library had access to sLexisNexis and could do digital searches through LexisNexis for the materials he requested.

Defendants' argument in response is that Johnson had no cognizable claim that was impeded by his lack of access to the law library. Defendants argue that because Nevada State law precludes all claims related to denial of parole, that Johnson had no cognizable claim related to his denial of parole, and is therefore precluded from bringing an Access to the Courts claim. While Nevada law does not create an express liberty interest in parole, and federal courts have said there is no way to challenge the *substance* of a state parole board's decision, Johnson could have brought *procedural* challenges to the parole board's decision. Under Wilkinson v. Dotson, § 1983 claims are available as procedural challenges to state parole board decisions when prisoners request injunctive relief in the form of a new hearing. 544 U.S. 74, 82 (2005) (noting that challenges to parole procedures are cognizable under Section 1983). Additionally, Ninth Circuit case law supports federal habeas corpus claims of procedural issues with a state parole board's decision to deny parole. See Oropeza v. Woodford, 436 Fed. App'x. 826 (9th Cir. 2011) (applying Supreme Court law and dismissing petitioner's challenge to parole decision based on failure to make a procedural challenge). As such, Johnson did have a cognizable claim, and his failure to pursue the correct method of challenging the denial of his parole does not preclude his access to the courts claim against ESP.

To make a successful claim against the Prison under Monell, Johnson would have to show there was a policy or practice in place that violated his constitutional right to an adequate law library and impeded his cognizable claim to challenge the denial of his parole. Johnson's allegations present a potential constitutional problem under Monell. First, ESP's policy does not allow physical access to the library and its materials, which on its own would not likely violate Johnson's right to access to the courts. But the policy is coupled with a practice of not responding to general or topical research requests. The policy prevented Johnson from doing his own research to learn the legal information necessary to successfully challenge his parole denial, and the practice meant that the library staff would not do the general research for him. Together, this meant that he was not able to identify the correct procedure for challenging the denial of his parole, and was therefore incapable of bringing his challenge. If Johnson had physical access, he potentially could have done the general research necessary to identify the cognizable claim he could have brought.

The alleged policy would require Johnson to know the exact caselaw for a myriad of federal challenges related to incarceration – an expectation that attorneys and even judges could not satisfy.

There remains a factual question as to whether Johnson requested materials or related LexisNexis searches that would have let him discover the appropriate legal mechanism for his parole challenge. Johnson has asserted that the material he requested would have permitted him to challenge his parole hearing determination. Defendants have not provided any factual record of the content of Johnson's requests or the responses to his requests. As such, there is a genuine issue of disputed fact whether Johnson received just the specific materials he requested or if he received general information related to what he was requesting. Viewing the disputed facts in a light most favorable to Johnson, if ESP's library policy failed to provide the legal information necessary for and requested by Johnson to discover the legal authority to bring a federal due process challenge to his parole hearing, then the library access policy is inadequate, and the policy would have violated Johnson's right to access to the courts. Therefore, the Court DENIES Defendants' Motion for Summary Judgment on this claim against Defendants Young, Baker, and Cox in their Official Capacities.

### 3. Individual Capacities

Johnson has also sued Defendants Baker, Cox, and Young in their individual capacities. Johnson alleges that Young, as supervisor of the law library, was in charge of implementing the library policy and practice that violated his rights. He also alleges that Young, together with Defendants Baker and Cox, were responsible for creating the policy that allegedly violated Johnson's rights. The Defendants have not made any arguments asserting facts challenging these individual claims. Because the Court has noted above that the policy Baker, Cox, and Young allegedly created and implemented potentially violated Johnson's right to access to the courts, and Defendants have not presented any facts or arguments attempting to refute the individual participation of Baker, Cox, or Young, the Court holds that these claims may proceed. Therefore, the Court DENIES Defendants' Motion for Summary Judgment on this claim against Defendants Young, Baker, and Cox in their Individual Capacities.

### i. Qualified Immunity

Defendants argue that even if there is a dispute of material fact related to Young, Baker, and Cox's individual participation, they would be entitled to qualified immunity because there is no constitutional right to physical access to the law library, and the system ESP has in place allows inmates to conduct adequate legal research without physical access. However, as discussed above, the system ESP uses to give access to legal materials without allowing physical library access potentially violated Johnson's right to access to the courts.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (citation and quotation marks omitted).

In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (citations omitted). The law allows the district court to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (citation and quotation marks omitted).

The Court finds that Defendants Baker and Cox would be entitled to qualified immunity on this claim. The Plaintiff does not allege that these individual defendants would have been aware of the nature of his requests regarding his legal challenge. That is to say, that the Court does not

find that the Plaintiff has established a genuine issue of disputed fact as these defendants' knowledge of the alleged library policy denying requests for more general federal legal treatises and reference material and denying a segregated inmate's requests to receive assistance in reviewing relevant legal treatises in preparation for a legal challenge. Without the knowledge of how the policy actually operated with respect to inmates like Johnson, these two individual Defendants could not have violated clearly established law.

Conversely, the Court finds that qualified immunity must be denied as to Defendant Young, the library supervisor. The Court finds that there is a genuine issue of disputed fact as to Young's knowledge of how library policy operated to impact Johnson's access to courts. Viewing the disputed facts in the most favorable to Johnson, if Young understood that Johnson was being denied access to legal material in the form of federal treatises and reporters that would have permitted him to bring a cognizable claim, or if Young understood that the policy for inmates like Johnson required them to have exact caselaw citations without the ability to review or read legal reference material on issues for their legal challenges, she would have been implementing a library policy contrary to clearly established law. Bounds, 430 U.S. at 828 (explaining that prisons are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law").

### B. First Amendment Free Exercise Claim

#### 1. Legal Standard

To implicate the Free Exercise Clause of the First Amendment, the plaintiff must show that a prison regulation substantially burdened a belief that is sincerely held and religious in nature. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994).

To be a "substantial burden," the regulation must do more than simply inconvenience one's exercise of religion. Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011). A substantial burden exists where the regulation exerts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (quoting Thomas v. Review Bd. of the

Indiana Emp't Sec. Div., 450 U.S. 707, 728 (1981)).

Once the plaintiff has shown a substantial burden of a sincerely held religious belief, the court must determine whether the prison regulation or action was "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). If so, it is still valid in light of the deference courts give to prison officials. Id. In considering whether a restriction is reasonably related to legitimate penological interests, courts consider four relevant factors, known as the Turner factors: (1) Whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) Whether alternative means of exercising the right remain open to inmates; (3) "[T]he impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) Whether "ready alternatives" to the challenged regulation exist. Turner, 482 U.S. at 89-90; see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008).

### 2. Official Capacity

#### i. Legal Standard

Suing an official in his or her official capacity is "another way of pleading an action against an entity of which the officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). As such, an official-capacity suit must be treated as a suit against the entity. Brandon v. Holt, 469 U.S. 464, 471 (1985). Under Monell, a government entity is only liable for deprivation of rights caused by its own official policies, customs, or practices. Monell, 436 U.S. at 690-92 (1978).

#### ii. Analysis

Johnson has sued Defendants Nwoko, Little, Shorter, Lopez, Baker, and Cox in both their official and individual capacities. The Court looks to the official capacity claims first, and, because these claims are against the same entity, the Court will consider all six official capacity claims together.

The Court finds that there is a genuine issue of disputed fact related to Johnson's First Amendment Free Exercise claim against Defendants in their official capacities. Defendants argue that they operated in accordance with the Memorandum issued by ESP stating that inmates were

to be served their morning meals "as expeditiously as possible" after 5:00 am. (ECF No. 46-9). While the subject line of this memorandum is "2013 Ramadan Feeding," it is dated June 10, 2014. (Id.) This internal inconsistency calls into question whether the memorandum ESP policy for Ramadan was in effect or followed in 2013.

Additionally, as there is a factual dispute about what specific times Johnson was fed each day, the Monell claim would proceed even if the memorandum was in effect in 2013. Johnson has alleged a pattern or practice of feeding Ramadan participants after dawn, in violation of NDOC AR 810.2, which recognizes that Ramadan participants must fast from before dawn until after dark. Dawn is at a different time every day, but always before sunrise, and, according to Johnson, was before 5:00 am during Ramadan 2013. If the memorandum was in place in 2013, there is still potential for liability because the memorandum creates a policy that is in contradiction with NDOC's regulation that recognizes that the Ramadan fast must be from dawn until dusk. Because Defendants have not asserted any facts or presented any evidence supporting the memorandum's validity, the Court cannot determine these issues as a matter of law. Therefore, the Court DENIES Defendants' Motion for Summary Judgement for the First Amendment Free Exercise claim against all Defendants in their Official Capacities.

### 3. Individual Capacities

Johnson alleges that all the named Defendants on this claim participated in some way in violating his right to participate in the Ramadan fast. He claims Correctional Officer Nwoko was responsible for serving his morning meal late on July 9 and 10, 2013; that Correctional Officer Shorter refused to serve him his morning meals at the correct times; that Senior Officer Little refused to serve him his morning meals at the correct times, and specifically participated in serving his morning meal late on July 10, 2013; that Kitchen Supervisor Lopez messed up meal delivery times, causing his morning meals to be served after dawn; that Warden Baker refused to serve him his morning meals at the correct time despite knowing he was supposed to be served before dawn; and that NDOC Director Cox refused to serve him his morning meals at the correct time despite knowing the Ramadan fast was between dawn and dusk. Defendants have failed to dispute these allegations or present any facts or evidence to attempt to dispute these individual claims. Because

the Defendants have not raised facts to dispute the individual claims, the Court DENIES Defendants' Motion for Summary Judgment for Defendants Nwoko, Shorter, Little, Lopez, Baker, and Cox in their Individual Capacities.

### i. Qualified Immunity

Defendants argue that even if there are genuine issues of disputed fact related to Defendants' participation in the alleged constitutional violation, they would be entitled to qualified immunity because they were acting in accordance with the prison's Ramadan Memorandum. As this is the sole basis for Defendants' qualified immunity argument for all Defendants, the Court considers the request for qualified immunity for all Defendants together.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014).

In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id. Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011). The law allows the district court to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Mattos v. Agarano, 661 F.3d at 433, 440 (9th Cir. 2011).

The Court must deny qualified immunity to the individual defendants on this claim because there is a genuine issue of disputed fact as to their knowledge of the violation of Johnson's rights and as to their knowing participation in violating his rights. Because the Ramadan Memorandum

is in dispute, the Court cannot consider it as a basis for qualified immunity. When considering the facts as alleged and in the light most favorable to the non-moving party, Johnson claims that he was served his meals after dawn, that the NDOC Regulations require Muslim prisoners to be given meals before dawn, that the individual defendants knew he was Muslim, and that the various individual Defendants knew the regulation but nonetheless intentionally served him meals after dawn. Assuming the facts to be true for the purpose of the argument here, the individual Defendants' actions would have constituted a violation of a clearly established right. The Court therefore denies qualified immunity on this claim to the individual Defendants.

### C. Fourteenth Amendment Equal Protection Claim

#### 1. Administrative Exhaustion

Defendants argue that Johnson failed to exhaust his administrative remedies with regard to his Equal Protection claim, because he did not raise a separate informal or first level grievance regarding the Eid-al-Fitr Feast. The Prison Litigation Reform Act ("PLRA") requires that before bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion must be proper, meaning that the prisoner must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). Once the Defendants have carried their burden of showing the Plaintiff failed to exhaust each step of the grievance process, the onus falls on the Plaintiff to present evidence that the remedies ordinarily available to him were not available in his case. Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).

The Court finds that the Defendants have sufficiently carried the burden of showing that Johnson has not fully exhausted his administrative remedies. Defendants have presented a second-level grievance in which Johnson complains of being denied the Eid-al-Fitr feast along with a complaint about his late morning meals during Ramadan. (ECF No. 46-12). In the response to this grievance, Johnson was told that he could not complain of a new issue in a second-level grievance without first bringing an informal and first-level grievance related to that issue. (Id.) Johnson has simply alleged that he filed the lower-level grievances, but has only presented the Court with a single illegible document to support these assertions. (ECF No. 32). Because Johnson has not

brought evidence showing that he either filed the informal and first level grievances or that they were somehow unavailable to him for this grievance, the Court finds that summary judgment must be GRANTED in favor of the Defendants for this claim.

## VI.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's First Amendment Access to the Courts claim against Defendants Young, Baker, and Cox in their Official Capacities.  The Motion is GRANTED as Baker and Cox in their individual capacities but DENIED as to Young in her individual capacity.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's First Amendment Free Exercise claim against Defendants Nwoko, Shorter, Little, Lopez, Baker, and Cox in their Official and Individual Capacities.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Fourteenth Amendment Equal Protection claim against Defendants in their Official and Individual Capacities.

DATED:  October 18, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**